LEWIS LAW PLLC
220 White Plains Road
Tarrytown, NY 10591
(914) 761-8400
klewis@lewispllc.com
Kenneth M. Lewis

BRAVERMAN GREENSPUN, P.C.
110 East 42nd Street, 17th Floor
New York, NY 10017
(212) 682-2900
sgoldstein@braverlaw.net
kringston@braverlaw.net
Steven R. Goldstein
Kelly A. Ringston

Attorneys for the Board of Managers of the
Greene House Condominium

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                                            Chapter 11

KEN NAHOUM,                                                          Case No. 16-12662-mg

                             Debtor.
---------------------------------------------------------x
BOARD OF MANAGERS OF
THE GREENE HOUSE CONDOMINIUM,

                                                                               Adv. Pro. No.
                             Plaintiff,
            -against-

KEN NAHOUM,

                             Defendant.
---------------------------------------------------------X

### **COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF**

        Plaintiff, the Board of Managers ("**Board**") of the Greene House Condominium

("**Condominium**"), by its attorneys, Braverman Greenspun, P.C., as and for its complaint

against the Defendant Ken Nahoum ("**Nahoum**" or the "**Debtor**") alleges the following:

1

## INTRODUCTION

1. The Board brings this action in response to the Debtor's ongoing attempts to conduct a commercial film shoot at the Condominium in violation of the Condominium's governing documents. Plaintiff seeks an order permanently enjoining the Debtor: (i) from letting, licensing, hiring, or renting his units at the Condominium, and any limited common element appurtenant thereto, for any social, commercial or fundraising purposes, and (ii) from using, or authorizing the use of, any portion of the Condominium's common elements in connection with any photo, film or movie "shoot", or any other such similar production at any time absent prior written approval from Board.

## JURISDICTION, VENUE AND PARTIES

2. On September 20, 2016, the Debtor commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code.

3. This adversary proceeding is brought pursuant to Rule 7001(7) of the Federal Rules of Bankruptcy Procedure.

4. This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

6. Venue over this adversary proceeding resides in this Court pursuant to 28 U.S.C. § 1409(a).

7. The Board consents to the entry of final orders or judgment by the bankruptcy court.

8. Plaintiff is the duly constituted Board of the Condominium, which is located at 95 Greene Street, New York, New York, in the SoHo neighborhood of Manhattan.

9. The Condominium was established pursuant to, and in conformance with Article 9-B of the Real Property Law ("**RPL**") of the State of New York. More particularly, the Condominium was formed by the filing of a declaration for condominium ownership of the premises known as 93-99 Greene Street, New York, New York, as amended, originally dated January 24, 1985 and recorded in the Office of the City Register of the City of New York in Reel 1019, Page 304 on January 28, 1986.

10. Debtor is the owner of record of three penthouse units at the Condominium known as PHA, PHB and PHE. The units are physically combined, but remain separate tax lots.

## **FACTS**

11. On the evening of November 14, 2017, the Debtor unilaterally informed the Board (via email through his counsel) that he had scheduled a 3-day photo shoot to take place in his Units on December 4, 2017 from 7 a.m. – 5:30 p.m., December 5, 2017 from 6 a.m. – 2 p.m. and December 6, 2017 from 7 a.m. - 4 p.m.

12. The email provided scant details about the shoot, except to say that it was for a movie involving celebrity Jennifer Lopez, and that an unnamed production company would require use of the Condominium's common areas to run up the stairs "cable" to the Debtor's units, and would compensate the Board in the amount of $3,000 for its cooperation.

13. Although not explicitly stated, it can be reasonably inferred that the aforementioned cables would be connected to large, noise emitting generators situated on the street and sidewalk in front of the building entrance, along with customary film trailers and trucks. Once the cables were connected to the generators (work which will presumably begin in the very early hours of the morning), they would run through the Condominium's front door and

3

vestibule, continue into and through the lobby, and then run up 6 flights of stairs, out into the common sixth floor hallway, and into one or more of the Debtor's Units.

14. Additionally, all the typical production equipment, such as lights, special filters, booms, grips, cameras and other such devices, materials, tools and non-descript heavy equipment, as well as the production cast and crew, would presumably be transported to and from the Units via the Condominium's residential passenger elevator.

15. Pursuant to RPL 339-j, the Debtor, as a unit owner at the Condominium, is obligated to strictly comply with the Condominium's By-Laws, rules and regulations pursuant to RPL §339-j.

16. The Condominium's By-Laws set forth certain regulations concerning the use of residential units, limited common elements and common areas, which the Debtor has breached.

17. Article VIII, Section 1 of the Condominium's By-laws expressly prohibits residential unit owners from letting, licensing, hiring or renting their unit, or any appurtenant limited common element, for any commercial purpose. The Debtor's rental of his Units for use as a commercial filming location is a blatant violation of the By-laws.

18. Following receipt of the November 14, 2017 email, the Board, through counsel, advised the Debtor that renting his Units for a commercial purpose was prohibited by the By-Laws. In response, the Debtor explicitly stated that he was not renting his Units as a filming location. Rather, he maintained that he was an "integral" part of the production.

19. Article II, Section 2 of the By-law grants the Board absolute discretion over the use of the Condominium's common areas. The Debtor does not have the authority to offer the use of the Condominium's common areas to a film production company (or anyone else) for any reason.

4

20. Nonetheless, the Board requested that the Debtor provide a copy of his agreement with the production company, the name of the production and contact information for a representative for the production company so that its counsel could communicate with the production company directly concerning the shoot and the scope of requested access to the Condominium's common areas. The Debtor refused to provide the requested information.

21. Accordingly, by way of letter dated November 21, 2017, the Board advised the Debtor, through his counsel, that any use of the Condominium's common areas in connection with the shoot was prohibited. Further, the correspondence outlined the Board's myriad of serious concerns about allowing such a production to take place in the Condominium, including but not limited to those related to noise, disruption and impact to residential elevator service, insurance, indemnity, and a multitude of safety and security issues caused by the location of production equipment within and immediately outside the building and a large crew's need for unfettered access to an otherwise secure building. Finally, the correspondence repeated the Board's request for a copy of the Debtor's agreement with the production company and contact information.

22. To date, the Debtor's counsel has refused to provide the requested information.

23. Nonetheless, only as a result of its own due diligence, counsel for the Board located and spoke with the location coordinator for Second Act Productions, LLC, the entity producing the feature film "Second Act" starring Jennifer Lopez which is currently filming in New York City, and which was scheduled to begin filming at the Condominium on December 4, 5, and 6, 2017.

24. Contrary to the explicit representations of the Debtor that he was not renting the Units in violation of the By-Laws, the location coordinator confirmed that Second

5

Act had negotiated with the Debtor to utilize his Units at the Condominium as a filming location in exchange for a fee paid to the Debtor.

25. The location coordinator further confirmed that he believed that the Condominium had consented to use of its common areas in connection with the shoot provided it received appropriate certificates of insurance and a fee of $5,000.00 (notably, the Debtor advised the Condominium that the production had offered a fee of only $3,000.00, $2,000 less than its actual offer).

26. Finally, despite having only received notice of the shoot on November 14, 2017, the location coordinator revealed that Second Act had been negotiating with the Debtor for use of the Units through a location services broker for two months.

27. Upon information and belief, the Debtor intentionally refused to provide the Board with even the most basic information about the shoot – including the name of the production and contact information for the production company – so that he could conceal his improper, unauthorized and prohibited use of the Units and common areas.

28. Unfortunately, the Debtor's conduct as described herein is part of a pattern of unscrupulous conduct that the Board has been forced to address through the courts time and time again.

29. Pursuant to RPL §339-j, the Debtor's failure to comply with the Condominium's By-Laws is grounds for an action for injunctive relief, maintainable by the Board on behalf of all unit owners.

**FIRST CLAIM FOR RELIEF**
**(Permanent Injunctive Relief)**

30. Plaintiff repeats and realleges the allegations contained in paragraphs 1 – 29 as if fully set forth herein.

6

31. The Debtor is bound by the terms and conditions of the Condominium's By-Laws.

32. Upon information and belief, the Debtor has willfully violated the terms and conditions of the Condominium's governing documents by, *to wit*, offering and arranging for his Units to be used by a production company as a filming location in connection with a feature film in exchange for a fee, and offering and arranging for the Condominium's common areas lobby, hallway, stairway and elevator to be used by the production company in connection with the shoot.

33. Further, upon information and belief, the Debtor intentionally misrepresented the intended use of the Units, and refused to provide the Board with the name of the production and contact information for the production company so that he could conceal his improper, unauthorized and prohibited use of the Units and common areas.

34. The Debtor's unabashed violations of the Condominium's governing documents not only interfere with the rights of the Condominium's unit owners, occupants and tenants to the peaceful enjoyment of the property, but it poses a threat to the community's safety and security as well as to financial well-being of the Condominium.

35. Plaintiff has no adequate remedy at law and will suffer irreparable injury if an injunction is not issued.

36. A balancing of the equities tips in Plaintiff's favor.

37. By reason of the foregoing, the Board is entitled to a permanent injunction enjoining the Debtor: (i) from letting, licensing, hiring, or renting his units at the Condominium, and any limited common element appurtenant thereto, for any social, commercial or fundraising purposes, and (ii) from using, or authorizing the use of, any portion of the Condominium's common elements in connection with any photo, film or movie "shoot", or any other such similar

production at any time absent prior written approval from Board.

WHEREFORE, the Board respectfully requests entry of judgment on its Complaint as follows:

(i) enjoining the Debtor from letting, licensing, hiring, or renting his units at the Condominium, and any limited common element appurtenant thereto, for any social, commercial or fundraising purposes;

(ii) enjoining the Debtor from using, or authorizing the use of, any portion of the Condominium's common elements in connection with any photo, film or movie "shoot", or any other such similar production at any time absent prior written approval from Board;

(iii) Awarding the Board all costs, including attorneys' fees, associated with this action; and

(iv) Granting the Board such other and further relief as the Court may deem just and proper.

Dated: New York, New York
November 27, 2017

BRAVERMAN GREENSPUN, P.C.

By: Kelly A. Ringston
    Kelly A. Ringston

110 East 42 Street, 17th floor
New York, NY 10017
(212) 682-2900
kringston@braverlaw.net

LEWIS LAW PLLC
220 White Plains Road
Tarrytown, NY 10591
(914) 761-8400
Kenneth M. Lewis
klewis@lewispllc.com

Attorneys for the Board of Managers of the
Greene House Condominium